721 S.E.2d 62

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**Larry Arthur McFARLAND, Defendant Below, Petitioner.**

No. 101413.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 7, 2011.

Decided Nov. 23, 2011.

Christopher J. Prezioso, Esq., Luttrell & Prezioso, Martinsburg, WV, Attorney for Petitioner.

Brandon C.H. Sims, Esq., Assistant Prosecutor, Jefferson County Prosecutor's Office, Charles Town, WV, Attorney for Respondent.

## PER CURIAM:

Petitioner Larry McFarland was convicted by a jury of sexual assault in the second degree. Following that conviction, the State filed an information alleging that Petitioner had been convicted of a qualifying offense under the recidivist statute at W. Va.Code § 61–11–18.[1] Petitioner admitted at the arraignment on the recidivist information that he was the same person previously convicted of a qualifying offense in California. Accordingly, the circuit court sentenced Petitioner to not less than 20 nor more than 25 years in the penitentiary. Petitioner now appeals his

---

1. The pertinent portion of W. Va.Code § 61–11–18 (2000), provides:

 (a) Except as provided by subsection (b) of this section [regarding convictions for first degree or second degree murder], when any person is convicted of an offense and is subject to confinement in the state correctional facility therefor, and it is determined, as provided in section nineteen [§ 61–11–19] of this article, that such person had been before convicted in the United States of a crime punishable by confinement in a penitentiary, the court shall, if the sentence to be imposed is for a definite term of years, add five years to the time for which the person is or would be otherwise sentenced. Whenever in such case the court imposes an indeterminate sentence, the minimum term shall be twice the term of years otherwise provided for under such sentence.

sexual assault and recidivist convictions to this Court. For the reasons that follow, we reverse Petitioner's convictions and remand to the circuit court for a new trial.

## I.

## FACTS

Petitioner Larry McFarland met Grant B. and his wife, Elizabeth B.,[2] the alleged victim in this case, in a bar in the Spring of 2008. At that time, the parties planned to get together the next week. The following Sunday evening, Petitioner visited the home of Elizabeth B. and her husband. When he arrived at the home, Petitioner was drinking vodka and "some sort of pink juice." After Petitioner's arrival, the B.s and Petitioner all "took shots" of Jaegermeister. Subsequently, while Grant B. was talking on the telephone, Petitioner asked Mrs. B. if she and her husband "did" cocaine on a regular basis. Elizabeth B. responded that she and her husband did not, and that mentioning cocaine to her husband would be a bad idea. Elizabeth B. explained during her testimony that while her husband is "pretty adamantly against that sort of thing," she has "a more liberal view."

Later in the evening, the parties drank alcoholic beverages together and Petitioner and Elizabeth B. smoked marijuana supplied by Mrs. B. During her testimony at trial, Mrs. B. testified that she drank beers, vodka "with pink liquid," and Jaegermeister. She characterized the parties' drinking as "excessive." At some point during the evening, the parties looked at pictures of naked women on Petitioner's cell phone. Also, Mr. B. and Petitioner discussed the physical attributes of the lead singer of the country music group Sugarland, agreeing that she was "hot."

Ultimately, Mr. B. went to bed, and Petitioner and Mrs. B. remained up, continuing to drink alcoholic beverages together. At some point, Petitioner offered Mrs. B. cocaine. According to Petitioner, Mrs. B. did "a line of" cocaine. Mrs. B. testified that in order to appease Petitioner she merely dipped her finger in the cocaine and tasted it. During their conversation, Petitioner asked

Mrs. B. to rate his physical attractiveness and indicated that he would rate Mrs. B. a "nine." Mrs. B. stated that she did not want to rate Petitioner because she "was crazy" about her husband.

According to Mrs. B., the next thing she remembers is waking up in bed the next morning with her pants on inside out and her underwear on wrong. She felt ill, suffering vomiting, chills and severe vaginal pain. After Mrs. B. awoke, her husband called her from work and asked her why her pants were on inside out, and she replied that she did not know. Mrs. B. finally went to the hospital after 5:00 p.m. that day. A sexual assault exam revealed reddened areas and an ulceration on Mrs. B.'s external genitalia. According to the nurse who performed the exam, these injuries were consistent with a sexual assault. A DNA test performed by the West Virginia State Police indicated the presence of Petitioner's semen on Mrs. B.'s pants.

Subsequently, Petitioner was indicted for one count of second degree sexual assault. The State proceeded under the theory that Mrs. B. was physically helpless at the time of Petitioner's sexual contact with her. The State gave notice that it intended to offer into evidence prior sex crimes committed by Petitioner in California. After several pretrial hearings, the circuit court ruled that the prior sex crime evidence was admissible under Rule 404(b) of the West Virginia Rules of Evidence to show motive and plan. Following a two-day trial, Petitioner was convicted of second degree sexual assault.

Thereafter, the State filed a recidivist information seeking to enhance Petitioner's sentence based on the prior sex crime conviction in California. At the arraignment, the circuit court informed Petitioner of his right to contest the allegations and have a jury trial on the issue. Petitioner waived these rights and admitted that he was the same person convicted of the prior crime. The circuit court subsequently sentenced Petitioner to 20 to 25 years in the penitentiary. Petitioner now appeals his convictions and raises several assignments of error.

**2.** We adhere to our long-standing practice of

using initials in cases involving sensitive facts.

## II.

### STANDARD OF REVIEW

■ In order to decide the case before us, this Court finds it necessary to address two issues raised by Petitioner. The first issue is whether the State's evidence at trial was sufficient to support Petitioner's conviction. This Court's standard of reviewing claims of insufficiency of the evidence is well established.

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). In addition, we have made clear that

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. pt. 3, *Guthrie.*

■ The second issue that this Court will address is whether evidence of Petitioner's prior bad acts or crimes was properly admitted at Petitioner's trial. We have previously indicated:

The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W.Va. 294, 310–311, 470 S.E.2d 613, 629–630 (1996) (footnote and citations omitted). With these standards to guide us, we will now proceed to consider the issues.

## III.

### DISCUSSION

#### A. Sufficiency of the Evidence

This Court will first address Petitioner's claim that the evidence below was insufficient to convict him of second degree sexual assault. Petitioner contends that absent the improper Rule 404(b) evidence, there is insufficient evidence to support his conviction. Petitioner further asserts that the testimony presented at trial was actually exculpatory. Petitioner cites as an example Grant B.'s testimony that he, his wife, and Petitioner smoked marijuana in Mr. and Mrs. B.'s house while the couple's children were at home. In addition, Mr. B. indicated that he, his wife, and Petitioner talked about sex. Finally, Mr. B. testified that Petitioner voluntarily informed him and his wife of Petitioner's criminal history.

As additional examples of exculpatory evidence, Petitioner cites Mrs. B.'s testimony that she was drinking vodka and juice when Petitioner arrived and while her children were at home. Also, Mrs. B. admitted that she drank and did drugs with Petitioner, again, while her children were in the home. In addition, Mrs. B. testified that she had a more liberal view of using cocaine than her

husband; she permitted Petitioner to use cocaine at her house; and she did not ask Petitioner to leave after he expressed his opinion concerning Mrs. B.'s level of attractiveness. Finally, Mrs. B. admitted that she did not go to the hospital until after 5:00 p.m. the day after the alleged sexual assault.

Other testimony that Petitioner asserts points to his innocence includes that of the nurse who performed Mrs. B.'s sexual assault examination. This nurse stated that Mrs. B. lied about her drug use on the night of the alleged sexual assault. The nurse further testified that Mrs. B.'s vaginal trauma could have been caused by having sex with her husband three days earlier. Moreover, Lieutenant T.G. White, who provided expert DNA testimony on behalf of the State, testified that he did not find any trace of Petitioner's sperm inside of Mrs. B. Finally, Petitioner's expert testified that persons suffering from alcoholic blackouts, similar to that suffered by Mrs. B. on the night in question, can perform several tasks but not remember those tasks when they awake from the blackout. Petitioner concludes from this overview of trial testimony that his conviction is based solely on the improper use of 404(b) evidence as the remaining evidence is insufficient to support a conviction.

The State responds that it had to prove beyond a reasonable doubt that: (1) Petitioner, (2) in Jefferson County, West Virginia, (3) on or about a day in May 2008, (4) did engage in sexual intercourse or sexual intrusion, (5) with Elizabeth B., (6) who was physically helpless. According to the State, elements (1) through (5) were uncontested by Petitioner.[3] Thus, the sole issue was whether Ms. B. was physically helpless at the time of sexual intercourse or sexual intrusion. Proof of this element consisted of Mrs. B.'s testimony that she had no recollection of events after Petitioner attempted to get her to rate his attractiveness on a scale of one to ten. She also indicated that at no time did she give Petitioner permission to have sexual contact with her. Mrs. B. further testified that the morning after the alleged sexual assault she awoke with vaginal pain, and a large bruise neither of which were present the night before. While Petitioner asserted an affirmative defense that he did not know that Mrs. B. was mentally incapacitated to the point of physical helplessness, there was evidence of the substantial amount of intoxicants consumed by Mrs. B. in Petitioner's presence. Considering all of this evidence, the State concludes that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.

█ Petitioner was convicted under W. Va.Code § 61–8B–4 (1991), which provides in relevant part:

(a) A person is guilty of sexual assault in the second degree when. . . .

(2) Such person engages in sexual intercourse or sexual intrusion with another person who is physically helpless.

(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty-five years, or fined not less than one thousand dollars nor more than ten thousand dollars and imprisoned in the penitentiary not less than ten nor more than twenty-five years.

When this Court applies our standard of review to the evidence adduced at trial, we believe there was sufficient evidence to support Petitioner's conviction for second degree sexual assault as defined in W. Va.Code § 61–8B–4. Specifically, Mrs. B. testified that she passed out and awoke the next morning with her pants on inside out. Also, she had injuries on her crotch area, and she experienced vaginal pain. The nurse who performed the sexual assault examination opined that Mrs. B.'s injuries were consistent with sexual assault. In addition, Mrs. B. testified that she never consented to sexual contact with Petitioner. Finally, Petitioner's semen was found on Mrs. B.'s pants. Based on this evidence, this Court concludes that a rational trier of fact could find the essential elements of second degree sexual assault beyond a reasonable doubt.

**3.** Petitioner testified that he and Mrs. B. performed oral sex on each other.

## B. Admissibility of Rule 404(b) Evidence

Next, Petitioner assigns as error the admission at trial of Petitioner's prior conviction of a sexually-based crime in California. During the State's opening statement at trial, the prosecution summarized the State's evidence and declared:

> But even more compelling than all of those things, you are going to hear that the Defendant has previously been convicted in California in 1999 of two counts of sexual penetration with a foreign object and one count of forcible rape and another count of sexual battery.
>
> You will hear from the record of those convictions that the Defendant's method of sexual gratification is to penetrate his victim with an object, usually his hand or his finger, while he masturbates on them. Folks, that is what happened here, the victim was unconscious and completely unaware, just as the Defendant planned it, he penetrated her with his fingers and hand or another object and masturbated on her and he left his sperm on her pants. Then he pulled them up, zipped them up, buttoned them up and said, I didn't do anything, nothing happened.

During the State's case-in-chief, the court permitted the prosecution to read to the jury the prior charges filed against Petitioner in California as follows: [4]

> Count 1: On or about September 29, 1995, Larry Arthur McFarland, in violation of Section 289(a) of the Penal Code (anal or genital penetration by foreign object), a felony, did willfully and unlawfully cause penetration of the genital and anal openings of Jennifer R. by a foreign object, substance, instrument and device, to wit: finger, in violation of Penal Code Section 289(a). Said act was for the purpose of sexual arousal, gratification and abuse and was accomplished against the victim's will by means of force, violence, duress, menace and fear of immediate unlawful bodily injury on the victim and on another.

It is further alleged that the above offense is a serious felony within the meaning of Penal Code Section 119.7(c)(25).

> Count 2: On or about February 26, 1995, Larry Arthur McFarland, in violation of Section 261(a)(2) of the Penal Code (forcible rape), a felony, did willfully and unlawfully have and accomplish an act of sexual intercourse with Julie M., not his or her spouse, against victim's will, by means of force, violence and fear of immediate and unlawful bodily injury on said person and another.

It is further alleged that the above offense is a serious felony within the meaning of Penal Code Section 1192.7(c)(3).

> Count 3: On or about February 26, 1995, Larry Arthur McFarland, in violation of Section 289(a) of the Penal Code (anal or genital penetration by foreign object), a felony, did willfully and unlawfully cause the penetration of the genital and anal openings of Julie M. by a foreign object, substance, instrument and device, to wit: finger, in violation of Penal Code Section 289(a). Said act was for the purpose of sexual arousal, gratification and abuse and was accomplished against the victim's will by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury on the victim and on another.

The witness, Detective Harrison, who investigated Mrs. B.'s alleged sexual assault, then read to the jury Petitioner's plea agreement to the California offenses as follows:

> I offer to the Court the following facts as a basis for my plea of guilty to a felony: In [Orange County] on February 26, 1995 I had intercourse with Julie M. [a]gainst her will by means of force or fear of immediate and unlawful bodily injury on Julie M. I also penetrated Julie M. with my fingers against her will by force or fear of immediate bodily injury on her [f]or my sexual gratification. I also touched the intimate part of Julie M.'s body against her will for my sexual gratification while she was restrained. On September 29, 1995 in O.C. I penetrated Jennifer R. with my

---

4. After the prosecution read the charging document, the witness who was testifying at the time, Detective Harrison who investigated Mrs. B.'s

alleged sexual assault, verified the contents of the document.

fingers against her will by means of force or fear of immediate bodily injury for my sexual gratification.

The prosecutor again discussed the evidence of prior offenses at her closing argument:[5]

> Now, the motive for committing the crime. Did the Defendant have a motive? Well, yeah, he has a very specific method of sexual gratification. He likes to masturbate on top of a victim while he penetrates them with his hand or his fingers. That is how he reaches sexual climax. To be crude, that is how he gets off. How do we know this, what turns him on, because he has been convicted of doing the exact same thing twice previously. He has done it before and he did it here to Elizabeth [B.] on May 4th or May 5th of 2008.
>
> You will recall State's Exhibit No. 1 he pled guilty to penetrating Julie M. and Jennifer R., two different women, in California the exact same way as Elizabeth [B.] was penetrated. He masturbated on both of them just as he masturbated on Elizabeth [B.].
>
> Now, what kind of person does that? Somebody who gets a sexual thrill out of doing that, somebody who reaches gratification through doing that.
>
> Is that motive? You bet it is. If that is how you get turned on sexually, you are going to try to do it again, and that is exactly what the Defendant did. He wanted to get the same sexual thrill out of

Elizabeth [B.] he got out of Julie M. and Jennifer R.

> Now, this was a plan that the Defendant had in mind from the git-go.... [6] (Footnote added).

On appeal, Petitioner contends that the admission at trial of the prior bad acts evidence was error. First, Petitioner argues that, beyond a single conclusory statement, the circuit court failed to make any on-the-record findings pursuant to Rule 403 of the Rules of Evidence as to whether the probative value of the evidence was substantially outweighed by unfair prejudice. Next, Petitioner asserts that the State failed to prove that the prior bad acts occurred and that he committed the bad acts. Moreover, Petitioner posits that the prior bad acts were completely irrelevant to the current charge against him. Specifically, says Petitioner, the evidence did not establish a motive or plan but was simply used to improperly influence the jury. Finally, Petitioner complains that the method by which the State introduced the evidence was improper. The State was permitted to hand the jury copies of Petitioner's convictions without proper certification or any testimony regarding the same by a qualified, knowledgeable witness.

The State answers that the circuit court correctly permitted the State to use 404(b) evidence at trial following the *McGinnis* hearings, balancing tests and appropriate record findings. The State cites the circuit court's conclusions in the November 23, 2009

---

**5.** After the admission of the prior bad acts evidence during the State's case-in-chief, the circuit court read the following instruction to the jury:

> Ladies and gentlemen of the jury, the evidence that has just been read to you by the Prosecuting Attorney is what is called under the law evidence of collateral acts or collateral misconduct. It is not to be considered by you as establishing guilt of the crime with which the Defendant is charged in this case. You may consider that evidence for a very limited purpose only. *You may not consider it as* proof of the charges contained in this indictment. You may consider it to show motive, intent, scheme, plan or design if you feel that it does indeed prove that on the part of the Defendant, but you may not consider it for any other purpose, it is limited.

However, this Court has indicated that once the prosecution identifies the specific purpose for which the Rule 404(b) evidence is being offered,

the circuit court should instruct the jury to limit its consideration of the evidence to that purpose only, and we have further cautioned that "[i]t is not sufficient for ... the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b)." Syl. pt. 1, in part, *McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). Therefore, the circuit court's instruction was in error in that it did not instruct the jury to limit its consideration of the evidence to the purpose for which it was admitted. At the close of the trial, the circuit court did instruct the jury to limit its consideration of the evidence to the showing of motive and plan.

**6.** The prosecutor also cross-examined Petitioner extensively concerning the California offenses. The purpose of the cross-examination was to impeach Petitioner's testimony that he had been convicted of statutory rape in California.

hearing to support its claim that the circuit court made proper findings. According to the State, Petitioner's prior sex offenses were strikingly similar to the instant crime. In both the prior cases and this case, Petitioner ejaculated on the victim's clothing rather than in her vagina. As a result, the circuit court properly found that the prior bad act evidence shows Petitioner's motive for the crime against Mrs. B. Finally, the State cites the circuit court's November 30 ruling that "the balancing test, the Rule 403 balancing test, is satisfied" as proof that the court conducted the required balancing test.

With regard to the admission into evidence of prior bad acts evidence, Rule 404(b) of the West Virginia Rules of Evidence provides:

*Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This Court has explained Rule 404(b) as follows:

Rule 404(b) begins by restating the exclusionary principle of Rule 404(a) that evidence of crimes, wrongs, or acts is inadmissible to prove that a person acted in conformity therewith on a particular occasion. The second sentence of Rule 404(b), however, expressly permits the introduction of specific acts in the nature of crimes, wrongs, or acts to prove purposes other than character, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, Rule 404(b) permits the introduction of specific crimes, wrongs, or acts for "other purposes" when character is not, at least overtly, a link in the logical chain of proof.

*State v. McGinnis,* 193 W.Va. 147, 153–154, 455 S.E.2d 516, 522–523 (1994). Further, we have stated that the purpose of Rule 404(b) is

to prevent the conviction of a defendant for one crime by use of evidence tending to show that he engaged in other legally unconnected criminal acts and to prevent the inference that because he had engaged in or may have engaged in other crimes previously he was more likely to commit the crime for which he was being charged.

*State v. Simmons,* 175 W.Va. 656, 657, 337 S.E.2d 314, 315 (1985), *citing State v. Harris,* 166 W.Va. 72, 272 S.E.2d 471 (1980).

The ground rules that a circuit court is to follow when considering the admission of evidence under Rule 404(b) are well established and straightforward:

When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

Syl. pt. 1, *State v. McGinnis, supra.* In addition,

[w]here an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was

committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. pt. 2, *McGinnis.* Finally, this Court has recognized that

Rule 404(b) determinations are among the most frequently appealed of all evidentiary rulings, and the erroneous admission of evidence of other acts is one of the largest causes of reversal of criminal convictions. It is equally inescapable that where a trial court erroneously admits Rule 404(b) evidence, prejudicial error is likely to result.

*McGinnis,* 193 W.Va. at 153, 455 S.E.2d at 522 (citations omitted).

 After applying the relevant law regarding the admission of evidence under Rule 404(b) to the instant facts, this Court concludes that the evidence of Petitioner's prior bad acts was not properly admitted at Petitioner's trial. First, we find that the circuit court did not admit the prior bad acts evidence for a legitimate purpose under Rule 404(b). The prosecution argued at the November 23, 2009, pre-trial hearing that the evidence was admissible to show plan and motive. Specifically, the prosecution stated:

the key facts with the [California] conviction, Judge, are the facts of how the defendant reached sexual gratification, that is he penetrated his victim with his hand or another object while he masturbated on top of the victim's person. That's exactly what happened here, that's the state's allegation. The facts are that the victim had severe vaginal pain consistent with something other than sexual intercourse and her pants—

\* \* \* \* \* \*

[The victim] was wearing her own clothing inside out with the pants buttoned up, her underwear on kind of wrong, or something, and Mr. McFarland's semen went on the outside—or actually on the inside of her pants. The pants were on inside out.

And the state believes that those facts are relevant and that it shows his motive because that is the way he reaches sexual gratification and his plan to do just as he had done previously in California and was convicted of doing.

When the court gave its instructions to the jury at the close of the evidence, it indicated to the jury that it may consider the prior bad acts evidence only for the limited purpose of showing Petitioner's motive and plan.

 Authorities have defined motive as "the impetus that supplies the reason for a person to commit a criminal act. Evidence of other crimes may be admitted to show that the defendant had a reason to commit the act charged, and from this motive it may be inferred that the defendant did commit the act." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 404.22[3], at 404–115 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2011) (footnotes omitted). In other words, motive explains why the defendant committed the crime. This Court has explained that "[t]his motive exception sometimes arises in cases involving a charged offense that is not sexual in nature, such as kidnapping or murder, where the underlying motive was to obtain some sexual favor." *State v. Dolin,* 176 W.Va. 688, 697, 347 S.E.2d 208, 217 (1986), *overruled in part on other grounds by State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990) (citations omitted). In the instant case, evidence of Petitioner's prior bad acts simply is not relevant to show Petitioner's motive for sexually assaulting Mrs. B. With regard to using the evidence to show a plan, "[o]ther-crime evidence may be admissible if the other act or crime is part of a common scheme or plan that includes the charged offense." *Weinstein's Federal Evidence,* § 404.22[5][a], at 404–125 (footnote

omitted). However, there is no evidence that Petitioner's crime in the instant case was part of a common scheme or plan that began several years earlier in California.

 Instead, it appears from the record below that the evidence was admitted to show Petitioner's specific method or *modus operandi* in sexually assaulting Mrs. B. This court has recognized "the theory that where a defendant commits a series of crimes which bear a unique pattern such that the *modus operandi* is so unusual it becomes like a signature, then evidence of other crimes may be admissible." *State v. Dolin*, 176 W.Va. at 698 n. 14, 347 S.E.2d at 218 n. 14 (citations omitted). However, this theory is inapplicable in the present case. This is because absent the evidence of prior bad acts, the evidence at trial was insufficient to show the manner in which Petitioner sexually assaulted Mrs. B. The jury was able to infer the Petitioner's method of sexual assault in the instant case only as a result of the evidence of the prior bad acts. In other words, the State used the prior bad acts evidence to establish its theory in the instant case. Therefore, the prior bad acts evidence actually became the State's theory of the case. This is clearly improper under Rule 404(b). Accordingly, we conclude that the circuit court abused its discretion in admitting evidence of Petitioner's prior criminal conduct in California at his trial in the instant case.

 Moreover, this Court finds that the admission of the prior bad acts evidence was unfairly prejudicial to Petitioner. The prosecution referred to the evidence as "compelling" in its opening statement. The prosecution presented the evidence in detail during the State's case-in-chief and questioned Petitioner at length about the evidence during its cross examination of Petitioner. Finally, the prosecution again discussed the evidence in its closing argument. Because the prior bad acts evidence played such a prominent rule at Petitioner's trial, coupled with the relative weakness of the State's case, we conclude that the prior bad acts evidence likely affected the outcome of Petitioner's trial.[7]

 Finally, we note that even if the prior bad acts evidence had been admitted for a proper purpose, the circuit court failed to conduct the balancing required under Rule of Evidence 403 before admitting the evidence. According to Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The transcript of the November 30, 2009, pre-trial hearing indicates the circuit court's finding "that the balancing test, the Rule 403 balancing test, is satisfied based upon the nature of the offense, the finding that the Defendant is the person by a preponderance of the evidence who did commit the earlier offense." However, the circuit court's performance of the balancing test does not appear on the face of the record. This is problematic. We previously have made clear that "[t]he balancing necessary under Rule 403 must affirmatively appear on the record." *State v. McGinnis*, 193 W.Va. at 156, 455 S.E.2d at 525. If the factors used by the circuit court in conducting the Rule 403 balancing test do not appear on the record, this Court is unable to effectively review the circuit court's decision to admit the evidence in question. Therefore, this Court concludes that the circuit court's failure to conduct the balancing test required by Rule 403 on the record also constitutes error.

## IV.

## CONCLUSION

For the reasons set forth above, this Court reverses Petitioner's conviction for sexual assault in the second degree. As a result, we also reverse Petitioner's recidivism conviction. Finally, we remand this case to the circuit court for a new trial consistent with this opinion.

Reversed and remanded.

---

7. Petitioner raised other assignments of error in his brief, but in light of this Court's disposition of this case we do not find it necessary to consider these assignments of error.

# 504

Justice DAVIS and Justice McHUGH dissent and reserve the right to file dissenting opinions.

DAVIS, J., dissenting:

In this case, the defendant, a serial rapist,[1] was convicted by a jury of sexual assault in the second degree. The majority opinion found that the evidence was sufficient to sustain the conviction. However, the majority opinion has reversed the conviction on the purported grounds that the trial court improperly allowed evidence of the defendant's prior convictions for sexual assault to be introduced into evidence. For the reasons set out below, I dissent.

## A. Sufficiency of the Evidence and Harmless Error

The first issue taken up in the majority's opinion involved the defendant's claim "that absent the improper Rule 404(b) evidence, there is insufficient evidence to support his conviction." The majority opinion reviewed the evidence, without discussing the Rule 404(b) issue of prior convictions, and concluded "that a rational trier of fact could find the essential elements of second degree sexual assault beyond a reasonable doubt." This conclusion by the majority opinion dictated that, to the extent the Rule 404(b) evidence was introduced improperly, harmless error review was necessary.[2] Because of the majority's utter failure to engage in any analysis of harmless error, the wrong standard of review was applied. In *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550 (1996), we enunciated the proper standard of review as follows:

A trial court's evidentiary rulings, as well as its application of the Rules of Evi-

dence, are reviewed for an abuse of discretion. *See McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). Even when a trial court has abused its discretion by admitting or excluding evidence, the conviction must be affirmed unless a defendant can meet his or her burden of demonstrating that substantial rights were affected by the error. *See State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996). In other words, a conviction should not be reversed if we conclude the error was harmless or "unimportant in relation to everything else the jury considered on the issue in question." *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432, 449 (1991). Instead, this Court will only overturn a conviction on evidentiary grounds if the error had a substantial influence over the jury. This reasoning suggests that when the evidence of guilt is overwhelming and a defendant is allowed to put on a defense, even if not quite so complete a defense as he or she might reasonably desire, usually this Court will find the error harmless. If, however, the error precludes or impairs the presentation of a defendant's best means of a defense, we will usually find the error had a substantial and injurious effect on the jury. When the harmlessness of the error is in grave doubt, relief must be granted. *O'Neal v. McAninch*, 513 U.S. 432, 438, 115 S.Ct. 992, 996, 130 L.Ed.2d 947, 955 (1995); *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

197 W.Va. at 705, 478 S.E.2d at 555. *See also State v. Barnett*, 226 W.Va. 422, 428–29, 701 S.E.2d 460, 466–67 (2010).

---

1. I refer to the defendant as a serial rapist because the victim in this case is the third person that the defendant is *known* to have raped. *See* Milli Kanani, *Hansen Testing Justice: Prospects for Constitutional Claims by Victims Whose Rape Kits Remain Untested*, 42 Colum. Hum. Rts. L.Rev. 943, 946 (2011) ("David Lisak, a clinical psychologist who researches the characteristics of 'undetected' rapists, found that of the 120 undetected rapists evaluated in one study, sixty-three percent were serial rapists. Those seventy-six rapists had, on average, attacked fourteen victims and were responsible for 439 rapes and attempted rapes, forty-nine sexual assaults, 277 acts of sexual abuse against children, and 214

acts of battery against intimate partners."). *See also People v. Story*, 45 Cal.4th 1282, 1297, 91 Cal.Rptr.3d 709, 204 P.3d 306 (2009) ("The evidence showed that defendant is a serial rapist, and that his raping conduct began before he killed Vickers and continued afterwards. The other four sexual assaults were quite similar in a number of respects to each other and to the crime of this case.").

2. I wish to make clear that I do not believe that the Rule 404(b) evidence was improperly allowed into evidence.

Under *Blake,* the majority opinion was required to review the Rule 404(b) issue for harmless error. However, the majority opinion totally ignored this review standard. A harmless error analysis was avoided because the majority wanted to reach a result that was not supported by the record.

This Court has set forth the harmless error test to determine whether the introduction of improper evidence in some instances constitutes reversible error or was harmless:

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. pt. 2, *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979). *Accord State v. Day,* 225 W.Va. 794, 803, 696 S.E.2d 310, 319 (2010). Under the *Atkins* test, it is clear that, assuming there was error in introducing the Rule 404(b) evidence, such error was harmless.

As previously stated, the majority opinion concluded that the evidence was sufficient to convict the defendant in the absence of the Rule 404(b) evidence. Thus the first two prongs of the *Atkins* test are resolved favorably toward a finding of harmless error, as established by the majority opinion. Clearly, the third prong of the test is also satisfied. During the trial in this case, the State presented overwhelming evidence of the defendant's guilt. The State presented testimony that the defendant "stated to the detective multiple times that he did not touch or have sex with [the victim]." Further evidence established that, prior to his arrest, the defendant "questioned the detective about the status of the case, whether semen had been found, and whether [the victim] had given a urine sample." In addition, the State pre-

sented testimony that, when the police went to the defendant's home to arrest him, the defendant stated "the DNA results came back." Finally, the State introduced DNA test results that found the defendant's semen on the crotch of the victim's underwear and also on her jeans. In addition to the overwhelming evidence of guilt set out by the State, it is also notable that the defendant compromised his own defense by changing his story during the trial. Initially, he claimed to be innocent of any sexual contact with the victim; however, he then recounted to the jury that he and the victim had engaged in consensual oral sex.

With the above facts clearly before the jury, it is beyond question that the jury would have convicted the defendant based solely thereon. Thus, the evidence of his prior rape convictions was harmless beyond a reasonable doubt. *See United States v. Courtright,* 632 F.3d 363, 372 (7th Cir.2011) ("At the end of the day, the only errors Courtright has established are the admission of his prior sexual assault of L. Miller … and possibly the jury instructions related to that admission. Even if we assume that these interrelated errors suffice to qualify as two independent errors, reversal is appropriate only if 'the errors, considered together, could not have been harmless.' … Again, there was abundant evidence of Courtright's guilt, so L. Miller's testimony and the related jury instructions could not have had any appreciable impact on the jury's verdict. Courtright's claim of cumulative error thus fails."); *United States v. Spence,* 2011 WL 2295053, at *1 (4th Cir.2011) ("[T]he introduction of inadmissible [Rule] 404(b) evidence may be found harmless when it is clear beyond a reasonable doubt that a guilty verdict would have been returned notwithstanding the evidence's admission."); *United States v. Dennis,* 497 F.3d 765, 769–70 (7th Cir.2007) ("Error in admitting Rule 404(b) evidence may be deemed harmless if we are convinced that the error did not influence the jury, or had but very slight effect, and can say with fair assurance … that the judgment was not substantially swayed by the error." (internal quotations and citation omitted)).

## B. Deficiencies in Trial Court's Consideration of Rule 404(b) Evidence

The majority opinion appears to have gone out of its way to find fault with how the trial court handled the Rule 404(b) evidence. The majority found that the trial court "failed to conduct the balancing required under Rule of Evidence 403 before admitting the evidence." Majority Op. at 228 W.Va. at 503, 721 S.E.2d at 73. This conclusion was made after the majority expressly acknowledged that the trial court stated in the record " 'that the balancing test, the Rule 403 balancing test, is satisfied based upon the nature of the offense, [and] the finding that the Defendant is the person by a preponderance of the evidence who did commit the earlier offense.' " *Id.* It is clear to me that, while the trial court did not go into details regarding its Rule 403 prejudice analysis, the trial court unquestionably performed such an analysis.

Assuming, for the sake of argument, that the trial court failed to adequately place on the record the findings required in syllabus point 2 of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994),[3] this failure would not in and of itself constitute reversible error. In *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), Justice Cleckley addressed the issue of a trial court's failure to fully comply with *McGinnis*:

Although we believe the trial court failed to articulate precisely the purpose of this evidence under Rule 404(b), this failure is subject to harmless error analysis. [I]f the purpose for admitting the evidence is apparent from the record and its admission is proper, the failure to follow *McGinnis* is harmless error. Our reading of the entire transcript reveals the relevance and apparent purposes for offering this evidence under Rule 404(b).

196 W.Va. at 312 n. 28, 470 S.E.2d at 631 n. 28. Moreover, the Court in *United States v. Joseph*, 178 Fed.Appx. 162 (3d Cir.2006), was confronted with the issue of a trial court's failure to instruct the jury on the limited purpose for which Rule 404(b) evidence was admitted. The Court held the following:

We need not consider whether the first three prongs of the four-part test for admission of Rule 404(b) evidence are satisfied, as it is uncontested that the fourth prong of the test was not met: the Court did not charge the jury to consider the evidence only for the limited purposes for which it is admitted. We assume without deciding that the failure to issue such an instruction, and thus the decision to admit the evidence, constituted clear or obvious error. Under the harmless error doctrine, however, a non-constitutional error will not warrant reversal unless we cannot conclude that there is a reasonable possibility that the [error] prejudiced [the defendant's] trial in any meaningful way.... If, however, the error was constitutional, we must reverse the conviction unless the error was harmless beyond a reasonable doubt.

Even assuming that the error here was constitutional, in light of the overwhelming evidence supporting Joseph's conviction, we conclude the error was harmless beyond a reasonable doubt....

---

**3.** Under Syllabus point 2 of *State v. McGinnis*, the following is required:

Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an in camera hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court·must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the

defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

193 W.Va. 147, 455 S.E.2d 516 (1994).

*Joseph,* 178 Fed.Appx. at 167 (footnote omitted) (internal quotations and citations omitted). *See also United States v. Trevino,* 2000 WL 1272447, at *2 (5th Cir.2000) ("Consequently ... the failure of the court to conduct an on-the-record 404(b) analysis is harmless.").

Justice Cleckley and the authorities cited above clearly indicate that, when a trial judge commits a procedural technical error in admitting Rule 404(b) evidence, such an error is subject to harmless error analysis.[4] Thus, even if the majority was correct in finding the trial court failed to place on the record its analysis of the prejudicial impact of the Rule 404(b) evidence, such an error was harmless in light of the reasons apparent from the record. *See State ex rel. Caton v. Sanders,* 215 W.Va. 755, 762 n. 6, 601 S.E.2d 75, 82 n. 6 (2004) ("We note that a failure to expressly articulate how 404(b) evidence is probative does not mandate automatic reversal. If the basis for the admission of the evidence is otherwise clear from the record, we can affirm the circuit court.").

### C. The Defendant's Prior Rape Convictions Were Properly Admitted

The record in this case is clear. The defendant is a serial rapist. The state sought to inform the jury that the defendant was previously convicted of two rapes in California. The state argued that this evidence was admissible to show motive and plan. The trial court admitted the evidence for such purposes and instructed the jury at the close of the evidence that it could consider such evidence only for motive and plan.[5] The majority opinion, through a convoluted analysis of legal principles, found that the evidence was not connected to a motive or plan. Based upon the method by which the majority opinion analyzed motive and plan, prosecutors in this state will never again be able to introduce evidence of rapes committed by serial rapists. In other words, the majority's rejection of the admission of the evidence, and its application to future cases, will now allow serial rapists to be paraded in front of juries as All–American boy scouts.

This Court addressed the issue of introducing other sexual misconduct as part of a plan by a defendant under Rule 404(b) in *State v. McIntosh,* 207 W.Va. 561, 534 S.E.2d 757 (2000). In *McIntosh,* the defendant was convicted of three counts of third degree sexual assault. One of the issues raised on appeal was that the lower court erred by permitting the introduction of evidence of sexual misconduct with four other victims. This Court observed that the trial court instructed the jury as follows:

> In this instant [case], the testimony of the other sexual misconduct of the defendant may be considered only as it relates to the issues of the State establishing a common scheme or plan on the part of the defendant or the defendant's lustful disposition towards teenage girls.

*McIntosh,* 207 W.Va. at 571, 534 S.E.2d at 767. Further, in *McIntosh,* it was found that the instruction was proper and that the evidence was properly admitted:

> Upon review of the present matter, we find no clear error in the lower court's determination that there was sufficient evidence to show that the other bad acts actually transpired. We also find that the lower court properly deemed the evidence

---

**4.** It has been appropriately noted by one commentator that "[a]llowing a serial rapist to remain free on an unlucky technicality ... seems excessive and ironically novel." Oliver M. Gold, *Trimming Confrontation's Claws: Navigating the Uncertain Jurisprudential Topography of the Post–Melendez–Diaz Confrontation Clause,* 43 Loy. L.A. L.Rev. 1431, 1443 (2010).

**5.** The majority opinion points out that, during the trial, when the Rule 404(b) evidence was admitted, the trial court gave a limiting instruction to the effect that the jury could consider such evidence only to show motive, intent, scheme, plan or design. The majority opinion found that this instruction was erroneous and supported reversal. However, the mere fact that, during the heat of the trial, the court cited all of the grounds listed under Rule 404(b) is of no moment. This is because, upon reflection after the trial, the court properly instructed the jury that the evidence could be considered only for motive and plan. *See United States v. Blauvelt,* 638 F.3d 281, 292 (4th Cir.2011) ("The district court did not specify the particular basis under Rule 404(b) on which it was admitting the 'bad acts' evidence. Nonetheless, we may sustain the admission of such evidence on any viable theory.").

admissible for a legitimate purpose, under a Rule 404(b) analysis, to demonstrate the defendant's intent, motive, malice, common scheme, plan, and the absence of accident. Employing the principles established in [our precedents], the lower court properly deemed the evidence admissible for the other stated purpose of showing the defendant's lustful disposition toward teenage girls who were his students. Further, we conclude that the lower court did not abuse its discretion in finding that the probative value of the other bad acts evidence was not substantially outweighed by the danger of unfair prejudice to the Appellant.

*Id.* 207 W.Va. at 574, 534 S.E.2d at 770.

In *State v. Cowley*, 223 W.Va. 183, 672 S.E.2d 319 (2008), the defendant was convicted by a jury of second degree sexual assault. One of the issues raised by the defendant on appeal was that the trial court erred in admitting evidence that he attempted to sexually assault another victim while the charges were pending against him in the instant case. This evidence was admitted under Rule 404(b) as evidence of a common plan. The opinion in *Cowley* set out the instruction given by the trial judge on the issue:

> The Court instructs the jury that the testimony of M.H., which was elicited during this trial, was admitted for a very limited purpose, and you must consider the testimony of M.H. only for the limited purpose for which it was admitted. It was admissible only to prove the so-called common plan, which means the method of operation of the defendant.
>
> It must not be considered by you for any other purpose. Specifically, you may not consider it in establishing that the defendant was a person of bad character and that he acted in conformity with that bad character, and therefore, he forcibly raped or attempted to rape the victim named in the indictment.
>
> It is only admissible to prove a common plan, which means the method of operation of the defendant.

223 W.Va. at 191, 672 S.E.2d at 327. After reviewing the evidence in *Cowley*, this Court summarily concluded "that the circuit court complied with the requirement for reviewing Rule 404(b) evidence and, therefore, we find no merit in this aspect of the appellant's appeal." *Id.* 223 W.Va. at 191, 672 S.E.2d at 327. *See also State v. Rash*, 226 W.Va. 35, 47, 697 S.E.2d 71, 83 (2010) ("Having reviewed the record before us, we conclude that it was appropriate to admit E.L.'s testimony as 404(b) evidence. While the Appellant's touching of E.L. may not have risen to the level of a crime, it was certainly an inappropriate, wrongful act which was admissible under Rule 404(b)."); *State v. Parsons*, 214 W.Va. 342, 351, 589 S.E.2d 226, 235 (2003) ("Our review of the record shows that the lower court followed the requirements of *McGinnis* in its handling of the 404(b) evidence. Moreover, we believe that the [other sexual conduct] incidents were neither so distant in time, nor so excessively numerous, as to deny Mr. Parsons a fair trial. Thus we must reject this assignment of error."); *State v. Graham*, 208 W.Va. 463, 541 S.E.2d 341 (2000) (allowed introduction of evidence of a prior first degree sexual abuse conviction of defendant during his trial for first degree sexual abuse).

Under *Cowley* and *McIntosh*, this Court determined that, for the purpose of introducing other sexual misconduct pursuant to Rule 404(b), a common plan means the method of operation of the defendant. The prosecutor in the instant proceeding showed that all three of the defendant's victims were penetrated with an object, and that the defendant masturbated on the victim in the instant case and one of the victims in an earlier sexual assault. Following this Court's precedent in *Cowley* and *McIntosh*, this evidence was more than sufficient to be introduced as a plan under Rule 404(b).

The majority opinion also concluded that the trial court erred in admitting the Rule 404(b) evidence to show motive. At trial, the prosecutor contended that the defendant's prior sexual assaults and the sexual assault in the instant case were motivated by sexual gratification. Courts around the country have found that sexual gratification is a valid ground for admitting other acts of sexual misconduct by a defendant to show motive. *See, e.g., Lemaster v. State*, 2008 WL 5264997, at *2 (Ark.Ct.App.2008) ("The State counters appellant's argument by contending

that these four individuals' testimony was relevant because it ... falls within the listed exceptions of Rule 404(b), for example, "motive," showing appellant's desire for sexual gratification by oral sex from a young child.... We agree."); *People v. Leonard,* 872 P.2d 1325, 1328 (Colo.App.1993) ("We also reject defendant's contention that the evidence was not admissible because the motive for the charged act was obvious, namely, sexual gratification. We recognize that evidence of uncharged conduct indicative of motive is generally admitted for the purpose of establishing identity or intent. However, admission of such evidence ... has been approved in sexual assault cases on a number of occasions as bearing on defendant's motive even though identity and intent were not at issue."); *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999) ("[T]he evidence was offered to show a modus operandi for the purpose of proving motive, intent, knowledge, and the absence of mistake or accident, *i.e.,* contrary to his statements to the police, Appellee knew what he was doing (knowledge), he did it on purpose (intent, absence of mistake or accident), and he did it for his own sexual gratification (motive)."); *People v. Bou,* 2011 WL 4949999, at *4 (Mich.Ct.App. 2011) ("The video evidence was offered primarily to show defendant's motive ...— namely, that he touched the victim for the purpose of gaining pleasure, arousal, or sexual gratification.... Because the video recording was relevant to defendant's motive ... and not merely to defendant's propensity— admission of the video evidence did not violate [Rule] 404(b)."); *People v. Venters,* 2002 WL 31928564, at *6 (Mich.Ct.App.2002) ("Regardless, those statements were relevant as to intent and motive, which are proper pur-

poses under MRE 404(b), where the prosecutor was required to establish that defendant's actions were for the purpose of sexual arousal and gratification."); *State v. Guenther,* 2006 WL 401309, at *10 (Ohio Ct.App.2006) ("Ms. Wilson's testimony was reasonably offered to prove appellant's motive to inappropriately touch a younger woman for the purpose of sexual gratification."); *Marx v. State,* 953 S.W.2d 321, 337 (Tex.Ct.App.1997) ("The complained-of statements are probative of the appellant's motive and knowledge in committing the offense charged—showing the motive of sexual gratification and knowledge that B.J. was only a child. Therefore, they were admissible for these purposes.").

The majority opinion sets new precedent by stating that the motive criterion under Rule 404(b) cannot be used to show sexual gratification as a reason for a serial rapist's conduct. I must assume that the majority opinion also overrules Justice Workman's well reasoned opinion in *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990), where it was held in Syllabus point 2 that, "[c]ollateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children[.]"[6]

Based upon the foregoing, I dissent. I am authorized to state that Justice McHugh joins me in this dissenting opinion.

---

**6.** The federal rules of evidence have a specific provision dealing with the admission of other sexual crimes by a defendant. Rule 413(a) expressly provides that "[i]n a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." *See, e.g., United States v. McGuire,* 627 F.3d 622, 626–27 (7th Cir.2010) ("The testimony was admissible as evidence of the defendant's modus operandi (and thus not excludable under Rule 404(b) ... ) and it was also admissible under Rules 413 and 414 as evidence of the defendant's previous crimes of sexual assault and child mo-

lestation, demonstrating a propensity to commit such crimes."); *United States v. Redlightning,* 624 F.3d 1090, 1120 (9th Cir.2010) ("Evidence that tends to show that Redlightning committed another sexual assault, namely, his 1990 confession to that sexual assault, was admissible under Rule 413 because it tends to show that Redlightning had the propensity to commit another sexual assault, namely, the Disanjh offense."); *United States v. Batton,* 602 F.3d 1191, 1196 (10th Cir.2010) ("The district court properly concluded that both Batton's prior conviction and the crime with which he is charged in this case qualify as sexual assault for Rule 413 purposes.").